**Alfredo MATA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–92–00074–CR.

Court of Appeals of Texas,
El Paso.

Nov. 3, 1993.

David C. Guaderrama, El Paso County Public Defender, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for state.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

### OPINION

BARAJAS, Justice.

This is an appeal from a conviction for the felony offense of illegal investment. Trial

was by jury upon Appellant's plea of guilty. Punishment was assessed by the jury at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of 30 years. In four points of error, Appellant asserts error in the trial court's refusal to permit his questioning of the venire about the prosecutor's side bar expressions, in denying him a hearing to determine whether the State exercised its preemptory challenges in a discriminatory fashion, and additionally challenges the sufficiency of evidence to support his judgment of conviction. We affirm the judgment of the trial court.

## I. *PROCEDURAL HISTORY*

The record in the instant case shows that Appellant entered his plea of guilty to the offense as alleged in the indictment, i.e., illegal investment. Appellant had earlier made his election for jury punishment. During the course of Appellant's voir dire regarding probation as an alternative to incarceration, one venireperson pointed out on individual voir dire before the Court that when Appellant's counsel was explaining probation, the prosecutor was shaking his head. The venireperson took this to indicate that the prosecutor didn't believe that probation was in fact working.

Following the conclusion of the above individual voir dire, Appellant made a motion for mistrial based on the prosecutor's conduct, and further requested that he be allowed to question the venire regarding whether they saw the prosecutor's actions and what effect it had on them. The trial court denied both motions. After eliciting the above information from a prospective juror, Appellant proceeded to question eight other prospective jurors individually. No questions were asked of the above prospective jurors regarding the prosecutor's alleged side-bar expressions, nor does the record show that Appellant was otherwise prevented from questioning those prospective jurors regarding such

alleged expressions. Additionally, no motion for new trial was filed in the instant case.

■ Prior to either Appellant or the State exercising its preemptory challenges, Appellant advised the trial court as follows:

"I will be wanting a *Batson* hearing after they have made their strikes. I am going to need to look at their strikes and see if they are striking Hispanics and find out the reason why." [1]

The record shows that the State, after conducting its voir dire examination, exercised its preemptory strikes by striking nine prospective jurors, five of whom possessed Hispanic surnames. After all strikes were exercised by both Appellant and the State, the jury was composed of six jurors who possessed Hispanic surnames.

After all preemptory strikes were exercised, Appellant objected to the State's exercise of three specific prospective jurors, i.e., Barbara Munoz Shull, Mario Zavala, and Javier Saenz. Appellant specifically objected to the striking of the above three prospective jurors because they are of the same ethnic persuasion as Appellant. In support of his contention, Appellant introduced the completed jury questionnaires for each of the above prospective jurors and proceeded to call the prosecutor as a witness for purposes of a *Batson* hearing. The trial court, after finding that Appellant had failed to establish a *prima facie* case, denied the request for a *Batson* hearing. Finally, while the record shows that Appellant requested the trial court take judicial notice that Appellant was Hispanic, the request was objected to by the prosecutor and the trial court never took judicial notice.

## II. *DISCUSSION*

In Points of Error Nos. One and Two, Appellant contends that the trial court erred in refusing his request to question the venire about the prosecutor's side bar expressions

1. The Court of Criminal Appeals has held that "a defendant may make a timely objection within the *Batson* lines, if such objection is made **after** the composition of the jury is made known but **before** the jury is sworn and the venire panel is discharged." *Henry v. State*, 729 S.W.2d 732, 737 (Tex.Crim.App.1987) (emphasis in the original). In the instant case, Appellant made his *Batson* motion **before** any preemptory strikes were made. While the better practice may be to wait to determine whether a *Batson* hearing is even necessary, we nonetheless find that Appellant's request for a hearing was timely.

said to have taken place during Appellant's voir dire examination. Specifically, Appellant states that because the sole question for the jury was the assessment of punishment, the actions by the prosecutor in allegedly shaking his head during Appellant's discussion of probation served to undermine the jury's complete consideration of probation as an alternative to incarceration.

■ Side bar remarks are comments of counsel that are neither questions to the witness nor comments addressed to the court. *See Brokenberry v. State*, 853 S.W.2d 145, 152 (Tex.App.—Houston [14th Dist.] 1993, no pet.); *Middleton v. Palmer*, 601 S.W.2d 759, 763 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). A comment is an observation or remark expressing an opinion or attitude. Webster's Ninth New Collegiate Dictionary 264 (1984). Consequently, side bar remarks may be non-verbal as well as verbal expressions. This Court will reverse when a comment is made that injects information "reasonably calculated" to prejudice members of the venire. A comment is considered reasonably calculated to prejudice if it exposes the venire to injurious and prejudicial matters which are reasonably calculated to prevent a fair trial. *See Herring v. State*, 758 S.W.2d 849, 853 (Tex.App.—Corpus Christi 1988 pet. ref'd.), *cert. denied* 493 U.S. 896, 110 S.Ct. 247, 107 L.Ed.2d 197 (1989).

■ As a general rule, in order to preserve error regarding side bar comments which are apparent on the record, an appellant must:

1. Interpose a timely objection. *Montoya v. State*, 744 S.W.2d 15, (Tex.Crim. App.1987), *cert. denied* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988);

2. Request that the court instruct the prospective jurors to disregard the comment made. *Id.;*

3. Move to quash the venire. *Sanchez v. State*, 769 S.W.2d 348 (Tex.App.—San Antonio 1989, no pet.);

4. Demonstrate that the comment created prejudice to the defendant by showing that other members of the venire heard or observed the comment. *Collins v. State*, 780 S.W.2d 176 (Tex.Crim. App.1989), *cert. denied* 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990).

5. Question prospective jurors who heard or observed the objectionable comments to determine whether the comments influenced them to the defendant's detriment. *Id.;*

6. Challenge for cause each prospective juror who heard or observed the comment. *Hogan v. State*, 496 S.W.2d 594 (Tex.Crim.App.1973), *cert. denied* 414 U.S. 862, 94 S.Ct. 81, 38 L.Ed.2d 112 (1973);

7. Exhaust peremptory challenges. *Hammett v. State*, 578 S.W.2d 699 (Tex. Crim.App.1979), *cert. dism'd* 448 U.S. 725, 100 S.Ct. 2905, 65 L.Ed.2d 1086 (1980);

■ In the instant case however, the prosecutor's non-verbal expressions are not apparent on the face of the record. Because this Court will not speculate as to whether or not other members of the venire observed the prosecutor's non-verbal expressions, or interpreted such expressions as did the sole identified venireperson, it was incumbent on Appellant to file a motion for new trial, supported by affidavit, showing the truth of the grounds of attack. *See generally Haynes v. State*, 627 S.W.2d 710, 711 (Tex.Crim.App. 1982). While a motion for new trial is not a requisite to presenting a point of error on appeal, such a motion is required to adduce facts not otherwise shown on the record.[2] TEX.R.APP.P. 30(a). The record in the pres-

2. Rule 30(a) does not limit the grounds under which a motion for new trial may be granted but rather provides the trial judge the general authority to grant such a motion. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex.Crim.App.1993) *citing State v. Evans*, 843 S.W.2d 576, 578–579 (Tex. Crim.App.1992). A trial judge abuses his or her discretion in failing to hold an evidentiary hearing on a motion for new trial that raises matters which are not determinable from the record. *See McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim.App.1985). As a prerequisite to obtaining an evidentiary hearing, the motion for new trial must be supported by affidavit, either of the accused or someone else specifically showing the truth of the grounds of attack. *Reyes v. State*, 849 S.W.2d at 816; *McIntire v. State*, 698 S.W.2d at 658.

ent case shows that Appellant failed to file any such motion for new trial.

Appellant, relying on *Spence v. State,* 758 S.W.2d 597, 599 (Tex.Crim.App.1988); *M__A__B__ v. State,* 718 S.W.2d 424 (Tex. App.—Dallas 1986, no pet.), asserts that he was denied the opportunity to question the venire about the prosecutor's side bar expressions, thereby being denied the right to adequately preserve error for appellate review. We disagree and find Appellant's reliance on the above authorities to be misplaced.

■ The rule in our jurisdiction is clear. The right to make an offer of proof or perfect a bill of exception as to **excluded** testimony is absolute. *Spence v. State,* 758 S.W.2d 597, 599 (Tex.Crim.App.1988); *M__A__B__ v. State,* 718 S.W.2d 424 (Tex. App.—Dallas 1986, no pet.); *R__M__G__ v. State,* 711 S.W.2d 397 (Tex.App.—Dallas 1986), *aff'd* 748 S.W.2d 227 (Tex.Crim.App. 1988). The instant case however, is not one in which Appellant has been denied the opportunity to present evidence, but rather, Appellant complains of a denial of a right to question the venire.

■ The right to counsel guaranteed by Article I, Section 10 of the Texas Constitution includes the right of counsel to question the venire in order to intelligently exercise peremptory challenges. *Ex parte McKay,* 819 S.W.2d 478, 482 (Tex.Crim.App. 1990) *citing Mathis v. State,* 167 Tex.Crim. 627, 322 S.W.2d 629, 631 (1959). Nonetheless, it is a well-established principle that the conduct of voir dire rests largely within the sound discretion of the trial court. *Boyd v. State,* 811 S.W.2d 105, 115–116 (Tex.Crim. App.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991). Whenever the trial court imposes a limitation in questioning prospective jurors, the standard for review is whether the trial court abused its discretion. *Id.*

As noted above, during the course of Appellant's voir dire regarding probation as an alternative to incarceration, one venireperson pointed out on individual voir dire before the Court that when Appellant's counsel was explaining probation, the prosecutor was shaking his head as if to indicate that he didn't believe that probation was in fact working.

During the individual voir dire of the above venireperson, the following exchange took place between Appellant's Counsel, the trial court, and the prospective juror:

COUNSEL: Mr. Fairbairn, you know this is a drug case. Okay?

JUROR: Yes.

COUNSEL: And I believe you said you could consider probation but you would take into consideration the seriousness of the crime, but also the character of the defendant. Is that a fair statement?

JUROR: Yes, sir.

COUNSEL: However you want to put it. As you stand here right now today, you can consider giving probation in a drug case?

JUROR: Well, it's fair to say, but like you know, like—I could tell that when you asked about the probation system, [the prosecutor] was shaking his head no, like that, you know, and—but he didn't—he didn't really seem like the probation thing was working here. I believe in—Well, I don't know—

COUNSEL: When I was explaining that the probation system worked, [the prosecutor] was shaking his head like it didn't work?

JUROR: Well, you know, when I said I felt like—

COURT: That's the impression you got anyway?

JUROR: Yes.

COUNSEL: So, are you—

JUROR: I feel like the probation would be a good thing if it—if it went as he described.

COURT: It works.

JUROR: Yes.

COUNSEL: Okay, Do you—do you have a feeling on that that [the prosecutor] believes that the Probation Department here in El Paso county doesn't work, based upon his behavior?

JUROR: Not based on his behavior. I haven't heard him on that.

COUNSEL: When he was nodding his head back and forth in a negative fashion.

JUROR: Well, your question was based on—on his—his reaction. Would—would I think that he didn't think it worked, you know, I—that just created a doubt. It didn't really—

COURT: Well, you would still consider it?

JUROR: Sir?

COURT: You would still consider it?

JUROR: I would consider it, yes. But I need to hear everything first.

. . . . .

COUNSEL: Can you consider probation in this case?

JUROR: Yes.

After eliciting the above information from a prospective juror, Appellant proceeded to question eight other prospective jurors individually. While each of the subsequent prospective jurors were asked individually whether they could consider probation in the instant case, no questions were asked regarding the prosecutor's alleged side-bar expression, nor did Appellant request to question those jurors regarding such alleged expressions. Moreover, Appellant failed to place the exact questions that he desired to ask in the record. *Caldwell v. State*, 818 S.W.2d 790 (Tex.Crim.App.1991), *cert. denied* — U.S. ——, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992).

 Given the above facts and circumstances, i.e., the fact that all jurors questioned regarding probation stated that they could consider such, coupled with the fact that Appellant failed to otherwise present to the trial court via a motion for new trial matters which were not otherwise apparent on the face of the record, we find that the trial court did not abuse its discretion in refusing Appellant the opportunity to inquire of the venire as to whether or not various members witnessed the prosecutor's alleged side bar non-verbal comments. Additionally, we note that not every side bar remark is

grounds for reversal. *Brokenberry v. State*, 853 S.W.2d at 152; *In re W.G.W.*, 812 S.W.2d 409, 416 (Tex.App.—Houston [1st Dist.] 1991, no writ). To obtain reversal of a judgment on the basis of improper side bar comment, Appellant must prove the side bar remark interferes with his right to a fair trial. *Id.* Appellant has failed in his burden and has further failed to preserve error for review by not filing a motion for new trial supported by affidavit(s). Accordingly, Appellant's Point of Error Nos. One and Two are overruled.

. Appellant, in his third point of error, complains of the trial court's failure to conduct a *Batson* hearing once the jury had been selected and he had made his *Batson* motion. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In order to challenge possible discriminatory selection of a venire, the defendant must make a *prima facie* showing that:

(1) he/she is a member of a cognizable racial group;

(2) the prosecutor has exercised peremptory challenges to remove from the venire members of a minority group;[3] and

(3) these facts, and any other relevant circumstances, raise an inference that the prosecutor excluded the venirepersons from the venire because of their race.

*Id.* at 96, 106 S.Ct. at 1722; *Henry v. State*, 729 S.W.2d 732, 734 (Tex.Crim.App.1987). A *prima facie* case represents the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true. *Tompkins v. State*, 774 S.W.2d 195, 201 (Tex.Crim.App.1987), *cert. granted*, 486 U.S. 1053, 108 S.Ct. 2818, 100 L.Ed.2d 919 (1988), *judgment aff'd per curiam*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989), *reh'g. denied*, 492 U.S. 933, 110 S.Ct. 16, 106 L.Ed.2d 630 (1989); *Rodriguez v. State*, 819 S.W.2d 920, 926 (Tex.App.—Houston [14 Dist.] 1991, no pet.). The burden of establishing a *prima facie* case is on the criminal

---

**3.** It is no longer necessary that the defendant and the struck veniremember be of the same race, only that the veniremember be a member of a minority. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Rousseau v. State*, 824 S.W.2d 579, 584 n. 9 (Tex.Crim.App. 1992).

defendant.[4] *See Tennard v. State,* 802 S.W.2d 678, 680 (Tex.Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); *Bean v. State,* 816 S.W.2d 115, 117 (Tex.App.—Houston [14th Dist.] 1991, no pet.). Once a *prima facie* case is established, the defendant is entitled to an adversarial hearing in order to challenge the State's possible discriminatory selection of a venire. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88; *Aguilar v. State,* 826 S.W.2d 760, 761 (Tex.App.— Fort Worth 1992, pet. ref'd); *see also* TEX. CODE CRIM.PROC.ANN. art. 35.261. On the other hand, if the defendant fails to establish a *prima facie* case, the trial court can safely deny the request for a *Batson* hearing.[5] Should a hearing be held, the burden is on the State to articulate racially neutral reasons for the peremptory strikes at issue. *Dewberry v. State,* 776 S.W.2d 589, 590 n. 1 (Tex.Crim.App.1989); *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723.

 Initially, we note that it is incumbent upon Appellant, if he is to be successful, to provide a record illustrating the trial judge's findings are clearly erroneous. *Williams v. State,* 804 S.W.2d 95, 101 (Tex. Crim.App.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991); see also *Hill v. State,* 827 S.W.2d 860, 865 (Tex. Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992); *Wyle v. State,* 836 S.W.2d 796, 797 (Tex.App.—El Paso 1992, no pet.). The trial court's findings regarding whether a *prima facie* showing has been made are entitled to "great deference" and will not be disturbed on appeal unless clearly erroneous. *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim.App. 1989) (opin. on reh'g); *Rodriguez v. State,* 819 S.W.2d 920, 926 (Tex.App.—Houston [14 Dist.] 1991, no pet.).

 In the instant case, Appellant objected to the State's exercise of three specific prospective jurors, i.e., Barbara Munoz Shull, Mario Zavala, and Javier Saenz. Appellant specifically objected to the striking of the above three prospective jurors because they were of the same ethnic persuasion as Appellant; however, the record fails to establish Appellant's ethnic background.[6] While the

4. The prima facie showing which the defendant must make has been the subject of much discussion. The Texas Court of Criminal Appeals has discussed the level to which this showing must rise in *Dewberry v. State,* 776 S.W.2d 589 (Tex. Crim.App.1989). There the court observed: "A *prima facie* case represents the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true. The party with the burden of proof must produce at least this much evidence to avoid a finding that the allegation is not true as a matter of law. Once produced, however, the allegation must be found true unless it is contradicted, impeached, or rebutted by other evidence...." Id. at 590 (quoting *Tompkins v. State,* 774 S.W.2d 195, 201 (Tex.Crim.App.1987), *cert. granted,* 486 U.S. 1053 (1988), *judgment aff'd per curiam,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989), *reh'g denied* 492 U.S. 933, 110 S.Ct. 16, 106 L.Ed.2d 630 (1989)).

5. On review, should an appellate court find that a *prima facie* was indeed established, the appeal will be abated and the cause remanded to the trial court with instructions to conduct a full adversarial hearing complying with Article 35.-261, V.A.C.C.P., and *Batson.*

6. The record reflects that following:
 [Appellant]: For purposes of the record, Your Honor, at this time I would ask the Court to take judicial notice that my client, Al Mata, is a member of an identifiable racial group. Any objections from the prosecution?
 Prosecutor: Well, I object, because we have no way of—I have no way of knowing that. I have to object.
 Court: I have his last name.
 [Appellant]: His physical appearance.
 Court: By his last name, that **may** be true.
 [Appellant]: His last name and his physical appearance, Your Honor.
 Court: I didn't know his last name, he could be Sicilian. He could be dark complected.
 Court: Without hearing the last name, you can't tell that he is Hispanic or not. The Court **could assume** he is Hispanic. [Emphasis supplied]
 The state of the record in the instant case differs dramatically from the record found in *Emerson v. State,* 820 S.W.2d 802, 804 (Tex. Crim.App.1991). In *Emerson,* the State voiced no objections made to the defendant's undisputed observations, and the Court consequently held that those observations constituted valid proof in support of appellant's prima facie case. *See also Hicks v. State,* 525 S.W.2d 177 (Tex.Crim.App. 1975); and *Canada v. State,* 660 S.W.2d 528, at 530 (Tex.Crim.App.1983). In the instant case, the State objected to Appellant's request that the trial court take judicial notice of Appellant's ethnic background.

record does contain incomplete juror questionnaires for each of the above three venirepersons, the questionnaires fail to establish the ethnic background of the three venirepersons. Additionally, the record fails to contain a list of the venire, in particular, the racial and/or ethnic composition of the venire. While Appellant asserts that the above three venirepersons were of the same ethnic persuasion as Appellant, he does not assert that the three individuals were the **only** venirepersons of the same ethnic persuasion. In fact, there is nothing in the record to show how many venirepersons were Hispanic or how many Hispanics were struck by the State. Finally, the record fails to contain the racial and/or ethnic composition of the jury ultimately selected.

In determining whether Appellant established the third element of his *prima facie* case, i.e., whether he showed any combination of factors sufficient to raise the necessary inference of purposeful discrimination, we note that the United States Supreme Court, in *Powers,* held that proof of racial identity between the defendant and the excluded venirepersons might serve in some cases to establish this element of a *prima facie* case. *See* 499 U.S. at 415, 111 S.Ct. at 1373–74. It follows, that where a defendant fails to establish that he belongs to the same race as the excluded venirepersons, he cannot rely upon racial identity as a factor raising an inference of discrimination. *Bean v. State,* 816 S.W.2d at 116. Moreover, where a defendant has wholly failed to establish that either he or any excluded venireperson is a member of a minority group, **no** inference can be drawn that such venirepersons were excluded from the venire because of their race or ethnic origin. As noted in *Bean v. State,* supra, *Batson* is not a talisman, the invocation of which automatically raises an inference of racial discrimination. It is, at best, a clumsy procedural mechanism for attempting "to confront race-based fears of hostility by means other than the use of offensive stereotypes." *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, ——, 111 S.Ct. 2077, 2088, 114 L.Ed.2d 660 (1991).

The facts and circumstances of the instant case, as supported by the scant record before us, do not raise an inference of discrimination on the part of the State. Consequently, we find that the trial court's ruling that Appellant failed to establish a *prima facie* case was not clearly erroneous. Moreover, given the state of the record before us for consideration, we find that Appellant failed to preserve error, and we overrule Appellant's third point of error.

In Point of Error No. Four, Appellant contends that the evidence is insufficient to sustain his judgment of conviction and thus, the trial court erred in entering judgment. Specifically, Appellant maintains that his conduct and that of his co-defendant constitute no more than an act amounting to mere preparation which tended, but failed to effect the commission of the offense of illegal investment.

When considering a sufficiency of the evidence point of error, this Court, as all appellate courts must do when a challenge to the sufficiency of the evidence is made, will review the facts of the case in the light most favorable to the verdict, in order to make the determination whether any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *DeGarmo v. State,* 691 S.W.2d 657, 661 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985). In viewing that evidence, this Court will look to all of the evidence in the case that was adduced at both stages of the trial, and not just that offered or presented by the State. *DeGarmo,* 691 S.W.2d at 661. In that regard, evidence admitted during the punishment phase may be considered in determining whether the evidence is sufficient to support the conviction. *DeGarmo,* 691 S.W.2d at 661; *Whatley v. State,* 822 S.W.2d 792, 794 (Tex.App.—Corpus Christi 1992, pet. ref'd); *Lopez v. State,* 852 S.W.2d 695, 697 (Tex.App.—Corpus Christi 1993, no pet.)

The record shows that on March 11, 1992, Appellant was fully and completely admonished pursuant to Tex.Code Crim.Proc.

ANN. art. 26.13 after which he entered his plea of guilty to the offense as alleged in the indictment. As noted, Appellant elected to have a jury assess punishment. During the punishment phase of the instant proceedings, Appellant testified as follows:

COUNSEL: And you have plead guilty before this jury and you are now telling the ladies and the gentlemen of this jury that you were involved in this illegal investment with respect to this cocaine?"

APPELLANT: That's very true and—and it's just about the stupidest thing I have ever done in my whole life without any question.

 A challenge to the sufficiency of the evidence is waived by testimony at the punishment stage admitting the crime. *Gordon v. State*, 651 S.W.2d 793 (Tex.Crim.App. 1983); *Brown v. State*, 617 S.W.2d 234 (Tex. Crim.App.1981); *Rodriguez v. State*, 691 S.W.2d 77, 80 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd). Accordingly, Point of Error No. Four is overruled.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.