COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| QUINN CRUZ, JR., | | No. 08-08-00213-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 205th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20060D00581) |
| | § | |

**O P I N I O N**

Quinn Cruz, Jr. appeals his conviction of capital murder. Prior to trial, the State gave notice that it would not seek the death penalty. A jury found Appellant guilty of capital murder and his punishment was automatically set at life imprisonment. *See* TEX.PENAL CODE ANN. § 12.31 (Vernon Supp. 2009). We reverse and remand for a new punishment hearing.

**FACTUAL SUMMARY**

Appellant and the victim, Tonya West, moved into the Crest Apartments on October 18, 2005. Approximately one week later, West left Appellant and moved into another apartment in the same complex. On the morning of November 18, 2005, Appellant and West had a conversation in the parking lot about their break-up. Several residents heard a gunshot and a woman scream and saw West attempting to get away from Appellant. The witnesses saw Appellant following her through the parking lot while firing a weapon at her at close range. One resident who rushed to West's side, asked if she knew who shot her, and she replied, "Quinn Cru --." West died later at the hospital.

One witness testified that Appellant calmly walked away. Another witness, James

Thomas, encountered Appellant as he left the scene and asked him what was going on. Appellant replied, "You better get over there, some serious shit just went down over there." Appellant then said he had to go. Later that same day, Appellant called the police and said he had done something horrible and wanted to turn himself into the police. He told the officer that he would go back to the scene and turn himself in. In a subsequent call to police, Appellant said he wanted to turn himself in, but he was afraid he would be shot. After being reassured he would not be harmed, Appellant told the detective that he was at a car wash near the apartments. Detectives went to the car wash and took Appellant into custody. Appellant later took the police to the drainage pipe where he had disposed of the gun.

The medical examiner, Dr. Juan Contin, performed the autopsy on West. He determined that four bullets had entered West's body. One of the shots had been fired at close range, approximately 12-15 inches. West died from internal bleeding caused by the multiple gunshot wounds. Dr. Contin discovered during the autopsy that West was about two to three weeks pregnant at the time of her death. The defense's medical expert, Dr. Harry Wilson, agreed with Dr. Contin's estimation of the embryo's stage of development as two to three weeks. According to Dr. Wilson, there would have been no visible signs of pregnancy and no one would have been able to tell from outward appearance that West was pregnant. It also was too early in the pregnancy for West to have experienced morning sickness.

A grand jury indicted Appellant for the capital murder of West and the unborn fetus by shooting West with a firearm. The trial court submitted to the jury the charged capital murder offense (both West and the unborn child) and the lesser-included offense of murder (West only). The jury found Appellant guilty of capital murder as charged in the indictment. This appeal follows.

**LEGAL SUFFICIENCY OF THE EVIDENCE**

In Point of Error One, Appellant challenges the legal sufficiency of the evidence to prove he had specific intent to kill the unborn child. In reviewing the legal sufficiency of evidence, we consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). A person commits murder if he intentionally or knowingly causes the death of an individual. *See* TEX.PENAL CODE ANN. § 19.02(b)(1)(Vernon 2003). A person commits capital murder if he intentionally or knowingly causes the death of an individual and he murders more than one person during the same criminal transaction. TEX.PENAL CODE ANN. § 19.02(b)(1); TEX.PENAL CODE ANN. § 19.03(a)(7)(A)(Vernon Supp. 2009). The Penal Code's definition of a "person" includes "an individual." TEX.PENAL CODE ANN. § 1.07(a)(38)(Vernon Supp. 2009). An "individual" is defined as "a human being who is alive, including an unborn child at every stage of gestation from fertilization until birth." TEX.PENAL CODE ANN. § 1.07(a)(26). If a person intentionally or knowingly causes the death of a woman and her unborn child at any stage of gestation, he commits the offense of capital murder. *See Lawrence v. State,* 240 S.W.3d 912, 915 (Tex.Crim.App. 2007), *cert. denied*, 553 U.S. 1007, 128 S.Ct. 2056, 170 L.Ed.2d 798 (2008).

At the time this case was tried, the concept of transferred intent applied to capital murder. *Norris v. State,* 902 S.W.2d 428, 437-38 (Tex.Crim.App. 1995), *overruled by Roberts v. State,* 273 S.W.3d 322 (Tex.Crim.App. 2008). Under this rule, if an accused killed his intended victim, and also killed an unintended victim, he was criminally responsible for both murders. *Norris,* 902 S.W.2d at 437-38. But more recently, the Court of Criminal Appeals overruled *Norris* in

*Roberts v. State,* 273 S.W.3d 322 (Tex.Crim.App. 2008). There, the defendant murdered a woman and her unborn child. The woman was eight to nine weeks pregnant, and as in the present case, there was no evidence that the defendant was aware the woman was pregnant. *See id.* at 327. In the context of a multiple-murder-capital-murder statute which requires that each death be intentional or knowing, the court held that when an accused only intends to kill one individual and actually kills that person, the intent manifested in that killing cannot also then transfer to another, unintended victim. *Id.* at 331.

The Court of Criminal Appeals reasoned that the concept of transferred intent cannot be used to charge capital murder based on the death of an unintended victim. Transferred intent may be used in regard to a second death only if there is proof of the intent to kill ths same number of persons who actually died; that is, with intent to kill two people and two other people are killed. *Id.* at 330-31. The court further held that in order to charge a person with intentionally killing the second person, an embryo in the *Roberts* case, there must be the specific intent to do so. *Id.* at 331. It then concluded that since Roberts did not know that the intended victim was pregnant, he could not form the specific intent to kill the embryo. *Id.* The court reformed the judgment to reflect a conviction for murder of the mother, and the case was remanded to the trial court for a new punishment hearing for a single murder conviction. *See id.* at 332.

The State concedes that the evidence is legally insufficient to prove that Appellant intended to kill the unborn child as there is no evidence he knew West was pregnant, but it argues that the judgment should be reformed to reflect a conviction for the murder of West and the cause should be remanded for a new punishment hearing. We agree. The trial court submitted the lesser-included offense of murder to the jury. Further, Appellant has not

challenged the sufficiency of the evidence proving he intentionally and knowingly caused the death of West by shooting her with a firearm. We therefore sustain Point of Error One. Unless we find reversible error in the remaining issues presented on appeal which would result in the granting of a new trial for purposes of guilt/innocence, the proper resolution will be to reform the judgment to reflect a conviction for the murder of West and remand the cause for a punishment hearing. *See Roberts*, 273 S.W.3d at 332; *see also Haynes v. State*, 273 S.W.3d 183, 187 (Tex.Crim.App. 2008). Having sustained Point of Error One, it is unnecessary to address Point of Error Two in which Appellant challenges the factual sufficiency of the evidence supporting the capital murder conviction. *See Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

## CONSTITUTIONALITY OF CAPITAL MURDER STATUTE

In Points of Error Three through Eight, Appellant contends that the statutory scheme permitting a capital murder prosecution and conviction for the murder of a pregnant woman and her unborn child is unconstitutional as applied to him in this case. The constitutionality of a statute should not be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised. *Turner v. State*, 754 S.W.2d 668, 675 (Tex.Crim.App. 1988). This court has held that if an appellant raises multiple issues on appeal, some of which challenge the constitutionality of a statute, the reviewing court should first resolve the non-constitutional issues and if a reversal is required, the issues regarding the statute's constitutionality should not be addressed. *Collins v. State*, 890 S.W.2d 893, 896 (Tex.App.--El Paso 1994, no pet.). Because we have found the evidence legally insufficient to support Appellant's capital murder conviction, we decline to address Appellant's challenges to the constitutionality of the capital murder statutes.

## WRITTEN QUESTIONNAIRES

In Point of Error Nine, Appellant complins that the trial court erred by failing to submit written questionnaires to the prospective jurors. He argues that the trial court's ruling deprived him of the effective assistance of counsel because it prevented counsel from being able to effectively question the jurors about various subjects, including the jurors' beliefs and attitudes towards the death penalty.

During a pretrial conference, defense counsel asked if a written questionnaire could be submitted to the jury panel. The trial court ruled that only the standard juror-information questionnaires would be used. Appellant subsequently filed a written request to submit additional questionnaires to the prospective jurors. Immediately prior to the beginning of voir dire, defense counsel again raised the written questionnaire issue but the trial court denied the request. That same day, Appellant filed a proposed written questionnaire which included a section addressing the potential jurors' beliefs regarding the death penalty.

The conduct of voir dire rests within the sound discretion of the trial court. *Woods v. State*, 152 S.W.3d 105, 108 (Tex.Crim.App. 2004); *Mata v. State*, 867 S.W.2d 798, 803 (Tex.App.--El Paso 1993, no pet.). Consequently, we review the trial court's decisions regarding the manner in which voir dire is conducted for an abuse of discretion. *Curry v. State*, 910 S.W.2d 490, 492 (Tex.Crim.App. 1995); *Mata*, 867 S.W.2d at 803. Generally, a trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990). Stated differently, a trial court abuses its discretion when it acts arbitrarily or unreasonably. *Id.*

Under Section 62.0132 of the Government Code, the Office of Court Administration is given the task of developing and maintaining a questionnaire to accompany a written jury summons. TEX.GOV'T CODE ANN. § 62.0132(a)(Vernon 2005). The statute mandates that the

questionnaire require a person to provide certain biographical and demographic information relevant to service as a jury member. TEX.GOV'T CODE ANN. § 62.0132(c). A person who has received a written jury summons and the questionnaire is required to complete and submit the questionnaire when the person reports for jury duty. TEX.GOV'T CODE ANN. § 62.0132(c), (d). Appellant has not cited any rule, statute, or any other authority requiring the trial court to submit additional questionnaires requested by either the State or the defense. It therefore cannot be said that the trial court acted without reference to any guiding rules or principles. Appellant has not shown that the trial court's refusal to submit the questionnaire constituted an arbitrary or unreasonable act given that defense counsel had the opportunity to examine the venire and ask questions about numerous topics including those addressed in the questionnaire. Appellant nevertheless argues, citing sociological studies and law review articles, that written questionnaires are a superior method of obtaining truthful information from potential jurors. While that may well be true, Appellant failed to present any of this information to the trial court. Additionally, the Court of Criminal Appeals has cautioned against reliance on written questionnaires to supply any information that counsel deems material due to the possibility of misinterpretation of questions. *See Gonzales v. State*, 3 S.W.3d 915, 917 (Tex.Crim.App. 1999). Because the record before us does not demonstrate an abuse of discretion, we overrule Point of Error Nine.

## RESTRICTION OF VOIR DIRE

In Points of Error Ten and Eleven, Appellant alleges that the trial court improperly restricted voir dire by not permitting him to ask a hypothetical question addressing the prospective jurors' ability to consider the minimum punishment if they found him guilty of the lesser-included offense of murder.

The right to counsel guaranteed by Article I, Section 10 of the Texas Constitution includes the right of counsel to question the venire in order to intelligently exercise peremptory challenges. *Ex parte McKay*, 819 S.W.2d 478, 482 (Tex.Crim.App. 1990); *Mata v. State*, 867 S.W.2d 798, 803 (Tex.App.--El Paso 1993, no pet.). When an appellant challenges a trial judge's limitation on the voir dire process, the reviewing court must analyze the claim under an abuse of discretion standard, the focus of which is whether the appellant proffered a proper question concerning a proper area of inquiry. *Jones v. State*, 223 S.W.3d 379, 381 (Tex.Crim.App. 2007); *Howard v. State*, 941 S.W.2d 102, 108 (Tex.Crim.App. 1996). A proper question is one which seeks to discover a veniremember's views on an issue applicable to the case. *Howard*, 941 S.W.2d at 108. If a proper question is disallowed, harm to the appellant is presumed because he has been denied the ability to intelligently exercise his peremptory strikes. *Id.* However, a trial court is given broad discretionary authority to impose reasonable restrictions on the voir dire process. *Id.* The trial court is permitted to control the scope of voir dire by limiting improper questioning. *Smith v. State*, 703 S.W.2d 641, 643 (Tex.Crim.App. 1985).

During voir dire, defense counsel addressed the issue of the potential jurors' ability to consider probation for the lesser-included offense of murder:

> Now, assume with me that you are on -- wait a minute -- one more little point. We are talking about the definitions of unborn child and there is some suggestion that the fetus, an unborn child, is also another stage of gestation called embryo.

> And apparently under the definitions of the law an unborn child which can be murder; an embryo.

> Now, I want you assume with me that you are on the jury. Now in a hypothetical case in which the accused was charged with capital murder; this is, the indicted charges were the accused intentionally and knowingly caused the death of a certain individual by shooting that individual with a firearm and the accused intentionally and knowingly caused the death of another individual; namely, the unborn child of the first victim with a firearm and both murders were committed

during the same criminal transaction.

It is your opinion in a hypothetical case where that was the original accusation. Assume further that you and your fellow jurors considered the case. You hear all the evidence, you went back in the juryroom. You have deliberated and you-all came to the conclusion and the verdict that the accused was not guilty of the capital murder for which he was indicted.

Okay. Assume with me further that after you and your fellow jurors found the accused not guilty of the capital murder, you considered all the evidence in the case and convicted the accused of the lesser included offense of murder.

And in order to do that, you would have had to determine that the accused committed intentionally, that he did it because he wanted to do it, that the accused was not forced to commit it, that the killing was not done in self defense, that it is not done in defense of a third party, that it was not an accident.

Not a mistake. That the accused was not insane, that the victim was totally innocent and that the victim did not provoke the murder or deserve to die.

After coming to these conclusions and arriving at a verdict of guilty of murder, your next job would be to determine the punishment in that case.

The prosecutor objected that the hypothetical was an improper attempt to have the jurors commit to a particular result under a particular set of facts. Appellant's attorney responded that he could include the elements of the indictment in the hypothetical. The trial court asked defense counsel to restate his hypothetical without getting into the facts of the case.

Defense counsel restated the hypothetical but again included the facts by asking the potential jurors whether they could consider five years probation in a case where the person was charged with intentionally and knowing shooting and killing the victim and her unborn child and the jury found the defendant guilty of murder. The State objected to the hypothetical on the ground of improper contracting and stated that the prospective jurors only had to be able to consider the full range of punishment in any given case, not the specifics of the case on trial. The court instructed defense counsel to ask whether the jurors could consider probation in an

appropriate case. Defense counsel insisted that he wanted to ask the question as stated and tendered the question in writing to the court. Ultimately, defense counsel was permitted to ask each prospective juror whether he or she could consider the minimum punishment where the defendant is found guilty of the lesser-included offense of murder.

During voir dire, an attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts. *Standefer v. State*, 59 S.W.3d 177, 179-80 (Tex.Crim.App. 2001). A question is a commitment question if one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question. *Id.* at 179-80. Not all commitment questions are improper. *Id.* at 181. The law requires jurors to make certain types of commitments. *Id.* Consequently, the attorneys may ask the prospective jurors whether they can follow the law in that regard. *Id.* For example, a prospective juror is challengeable for cause if he or she is unable to consider the full range of punishment provided for an offense. *Id.* Thus, the question, "Can you consider probation in a murder case?" is a proper question even though it commits a prospective juror to keeping the punishment options open (i.e., to refraining from resolving the punishment issues in a certain way) in a murder case. *Id.* But the question becomes improper when it adds facts beyond what is necessary to determine whether the prospective juror is challengeable for cause. *Id.* at 182. The inquiry for improper commitment questions has two steps: (1) is the question a commitment question, and (2) does the question include facts--and only those facts--that lead to a valid challenge for cause? If the answer to (1) is "yes" and the answer to (2) is "no," then the question is an improper commitment question, and the trial court should not allow the question. *Id.* at 182-83.

Here, the answer to the first question is "yes" because Appellant concedes, and we agree,

that the question he sought to ask is a commitment question. We further find that the answer to the second question is "no" because the hypothetical question utilized by defense counsel--stating that the defendant was accused of intentionally and knowingly killing a woman and her unborn child and the woman by shooting the woman, the woman was totally innocent, and the defendant did it because he wanted to do it--included facts beyond what was necessary to establish that a prospective juror was unable to consider the minimum punishment in a murder case. *See Standefer*, 59 S.W.3d at 181-82 (overruling *Maddux v. State*, 862 S.W.2d 590, 591-92 (Tex.Crim.App. 1993) which held that defendant in a murder case involving a child could inquire whether the prospective jurors could consider probation if the murder victim was a child). Thus, the hypothetical question Appellant sought to ask was an improper commitment question and the trial court properly disallowed it. Points of Error Ten and Eleven are overruled.

**CHALLENGES FOR CAUSES**

In Point of Error Twelve, Appellant maintains that the trial court erred by denying his challenges for cause to prospective juror number four and sixty-seven other prospective jurors who could not consider probation for the lesser-included offense of murder. Because Appellant was convicted of capital murder, the jury did not determine punishment. Consequently, any error relating to the punishment range of the lesser-included offense of murder is harmless because it made no contribution to Appellant's conviction or punishment. *See King v. State*, 953 S.W.2d 266, 268 (Tex.Crim.App. 1997)(where defendant was convicted of capital murder, Court of Criminal Appeals found harmless the alleged error in the denial of the defendant's challenges for cause related to two potential jurors' inability to consider probation for the lesser-included offense of murder because it made no contribution to the defendant's conviction or punishment). Point of Error Twelve is overruled.

**CUMULATIVE ERROR**

In Point of Error Thirteen, Appellant contends that cumulative error during jury selection prevented defense counsel from providing the effective assistance of counsel guaranteed by the state and federal constitutions.  There is some authority that a number of errors may be found harmful in their cumulative effect, but there is no authority holding that non-errors may in their cumulative effect cause error.  *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App. 1999).  We have found no error occurred in connection with Points of Error Nine, Ten, and Eleven.  In Point of Error Twelve, we did not address the merits of the complaint but found that even if error occurred it was harmless.  Because there is no basis for finding cumulative error, we overrule Point of Error Thirteen.

**TRIAL COURT'S CONDUCT**

In his final point of error, Appellant argues that the trial court violated his right to a fair trial by interrupting defense counsel during voir dire, making improper comments to the jury panel, assisting the prosecutor, and by questioning a witness.  Appellant admits that he did not object to any of the instances of alleged improper conduct by the trial judge, but he contends that the judge's behavior amounts to fundamental error, and therefore, he was not required to object.  In support of his fundamental error argument, Appellant cites the Court of Criminal Appeals' plurality opinion in *Blue v. State*, 41 S.W.3d 129, 131 (Tex.Crim.App. 2000)(plurality op.).

Due process requires a neutral and detached judge.  *Brumit v. State*, 206 S.W.3d 639, 645 (Tex.Crim.App. 2006), *citing Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).  Failure to raise a contemporaneous objection generally results in failure to preserve error for appellate review.  *See* TEX.R.APP. P. 33.1(a); *see also Brewer v. State*, 572 S.W.2d 719, 721 (Tex.Crim.App. 1978)(where no objection is made, remarks and conduct of the court may

not be subsequently challenged unless they are fundamentally erroneous).  But Rule 103(d) of the Texas Rules of Evidence authorizes appellate courts to take notice of fundamental errors affecting substantial rights even though they were not brought to the attention of the trial court.  TEX.R.EVID. 103(d).  In *Blue*, the trial judge apologized to the venire for its long wait, stated the delay was because the defendant was indecisive on whether to accept a plea bargain, and expressed his preference that the defendant plead guilty.  *Id*. at 130.  A plurality of the Court of Criminal Appeals held that the trial judge's comments tainted the defendant's presumption of innocence in front of the venire and amounted to fundamental error of constitutional dimension which required no objection. *Blue*, 41 S.W.3d at 132.  Thus, the defendant's failure to object did not constitute waiver.  *Id.* at 132.

*Blue* is not binding precedent because it is a plurality opinion.  *See Jasper v. State*, 61 S.W.3d 413, 421 (Tex.Crim.App. 2001)(acknowledging *Blue* as a plurality opinion that the court was not bound to follow).  In *Brumit v. State*, the defendant relied on *Blue*, but the Court of Criminal Appeals  held that we must look to the test set forth in *Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App. 1993) when determining whether comments by the trial judge can be raised on appeal absent an objection.  *Brumit v. State*, 206 S.W.3d 639, 644 (Tex.Crim.App. 2006).  Under *Marin*, it must be determined whether the alleged error violated (1) an absolute requirement or prohibition; (2) a right of the defendant that must be implemented by the system unless expressly waived; or (3) a right that is to be implemented upon request of the defendant.  *See Brumit*, 206 S.W.3d at 644.  Despite these comments, the court chose not to reach the preservation issue because it found that the judge's comments did not show partiality on the part of the judge.  *Id.* at 644-45.  In other words, the court did not reach the preservation issue because it addressed the merits and found no error.  Because the Court of Criminal Appeals has not

spoken definitively on the preservation issue, we will follow *Brumit's* approach and determine whether the trial judge's comments were erroneous.

A trial judge has discretion in maintaining control and expediting trial. *Jasper v. State*, 61 S.W.3d 413, 421 (Tex.Crim.App. 2001). It is not improper for a trial judge to interject to correct a misstatement or misrepresentation of previously admitted testimony. *Id.* Likewise, a trial judge is permitted to correct a misstatement of the law, explain a point of law or clear up confusion, or to expedite the proceedings. *See Jasper*, 61 S.W.3d at 421; *Moore v. State*, 275 S.W.3d 633, 636 (Tex.App.--Beaumont 2009, no pet.); *Murchison v. State*, 93 S.W.3d 239, 262 (Tex.App.--Houston [14th Dist.] 2002, pet. ref'd). Further, a trial judge is permitted to question a witness for the purpose of clarifying an issue or assisting the court in ruling on an objection. *Brewer v. State*, 572 S.W.2d 719, 721 (Tex.Crim.App. 1978); *Moore*, 275 S.W.3d at 636-37.

*Comments During Voir Dire*

Appellant first complains of five instances during voir dire when the trial court interrupted defense counsel to make comments. The first instance occurred while defense counsel was addressing pretrial publicity and possible bias. The court interrupted to comment on the value of the jury system and the failure of the media to be 100 percent accurate. The court also clarified that the bias counsel was discussing existed prior to the jury hearing any evidence. The court's comments were a permissible exercise of the court's discretion to explain and clarify a point of law or clear up confusion. *See Jasper*, 61 S.W.3d at 421; *Moore*, 275 S.W.3d at 636; *Murchison*, 93 S.W.3d at 262. The court also commented while defense counsel was addressing the defendant's right to remain silent. The court clarified the right to remain silent and emphasized that the State had the burden of proof. These comments were not improper because the court was clarifying the law. *See Jasper*, 61 S.W.3d at 421; *Moore*, 275 S.W.3d at

636; *Murchison*, 93 S.W.3d at 262.

Defense counsel then addressed what he referred to as gender bias on the part of the prospective jurors and he attempted to ascertain whether any of them felt it was easier to believe that a male defendant was the aggressor where the victim was female.  The trial judge clarified the meaning of the term bias and asked questions to clarify a prospective juror's views.  The trial judge acted properly by clarifying the meaning of the term bias.  Further, given that the judge might be called upon to rule on a challenge for cause, the judge did not act improperly by clarifying the prospective juror's views on this subject.

The court also interrupted defense counsel when counsel was addressing whether the venire could consider the minimum range of punishment in a case where the defendant was found guilty of the lesser included offense of murder.  As pointed out by the State, the judge made an initial comment clarifying the law, but the majority of the judge's comments were made at the bench outside the hearing of the jury.  The court's comment made to the venire was directed at clarifying the legal issue and were made necessary because defense counsel was attempting to ask improper commitment questions.  As such, it was a proper comment.  Further, the comments made at the bench could not have tainted the presumption of innocence nor could they have vitiated the defendant's right to an impartial jury trial.  *See Murchison*, 93 S.W.3d at 261-62 and n.4 (judge's comments made outside of jury's presence could not have affected defendant's right to an impartial jury trial); *see also Baca v. State*, 223 S.W.3d 478, 482 (Tex.App.--Amarillo 2006, no pet.)(judge's comment made outside of jury's presence could not constitute comment on the weight of the evidence and did not amount to fundamental error).

*Assisting the Prosecutor*

In instances 6, 8, 9, and 10, Appellant asserts that the trial judge improperly assisted the

prosecutors by instructing them to ask a witness certain questions and by telling the prosecutor how to lay a predicate. In the sixth instance set forth in Appellant's brief, a witness testified he saw a man shooting a gun and then leaving the scene. As the witness was about to be excused, the judge informed the parties at the bench that the prosecutor had not asked the witness to identify the shooter. In the jury's presence, the prosecutor asked a few additional questions and asked the witness if he could identify the shooter. The witness positively identified Appellant as the shooter. We agree that it was improper for the trial judge to remind the prosecutor, even outside of the jury's hearing, that she had not asked a witness to identify the defendant but the error does not demonstrate judicial bias nor does it rise to the level of fundamental error. *See Houston v. State*, No. 03-05-00188-CR, 2006 WL 431188 (Tex.App.--Austin February 24, 2006, pet. ref'd)(after defendant objected that State had failed to prove the prior DWI convictions in a felony DWI case, the trial judge stated that prosecutor could re-open the evidence and put on evidence of the prior convictions; court of appeals held that judge's suggestion was improper but it did not demonstrate judicial bias or amount to fundamental error). Appellant failed to preserve error because he did not object.

In the eighth and ninth instances, the State attempted to elicit testimony from two witnesses, James Thomas and Carlos Carrillo, regarding their observations of the victim at the scene. During Thomas' testimony, the State asked whether the victim made any statements but asked Thomas not to relate the statements. The defense raised a hearsay objection and the parties engaged in a discussion at the bench about the admissibility of the testimony. The judge told the prosecutor at the bench what part of the predicate the court believed had not been established. The trial court erroneously believed that under the dying declaration exception, the proponent of the evidence was required to prove that the witness believed that the declarant's death was

imminent.  Thomas testified in the jury's presence he believed West was dying but he never informed the jury of the substance of his conversation with her.  Carrillo testified he asked the victim who had done this to her, but the defense raised two objections, hearsay and failure to lay the proper predicate, before the witness could answer.[1]  During a bench conference,  defense counsel stated the court had previously misstated the admissibility requirements of Rule 804(b)(2), and she argued that the State was required to prove that the declarant believed her death was imminent.  The court sustained the objection after discussing the admissibility requirements with the attorneys at the bench.  The trial court took the matter under advisement and asked the parties to provide authority.

We agree with the State that the trial judge was not "coaching" the State in either instance as alleged by Appellant but rather was engaging in a discussion about the admissibility of the testimony.  Appellant provides no authority for the proposition that it is improper for a judge to explain to the parties, outside of the jury's presence, the basis for the court's ruling that evidence is or is not admissible.  The State correctly observes that these types of discussions occur in virtually every trial.  It should also be noted that the erroneous requirement that the trial judge placed on the State to prove that witness Thomas knew that the victim was dying could have proven extremely difficult for the State to establish had Thomas not been a Vietnam veteran who had seen numerous people die of gunshot sounds.  The court's erroneous ruling was not helpful to the State.  Finally, none of the judge's comments could have tainted the presumption of innocence or vitiated the impartiality of the jury because all of the comments occurred during bench conferences.  *See Murchison*, 93 S.W.3d at 261-62 and n.4 (judge's comments made

---

[1]  An objection that the proper predicate has not been laid is too general to preserve error.  *Paige v. State*, 573 S.W.2d 16, 19 (Tex.Crim.App. 1978).  To preserve error, counsel must inform the court just how the predicate is deficient.  *Bird v. State*, 692 S.W.2d 65, 70 (Tex.Crim.App. 1985).

outside of jury's presence could not have affected defendant's right to an impartial jury trial); *see also Baca v. State*, 223 S.W.3d 478, 482 (Tex.App.--Amarillo 2006, no pet.)(judge's comment made outside of jury's presence could not constitute comment on the weight of the evidence and did not amount to fundamental error).

In the tenth instance, the State was eliciting testimony from Michael Jordan, Sr., a lieutenant with the El Paso Fire Department about his observations and emergency medical treatment of the victim at the scene. When the State attempted to ask Jordan whether the victim had made any statements about her condition, the defense raised a hearsay objection and the trial court conducted a hearing outside of the jury's presence. During this hearing, the parties and the court engaged in a discussion about the admissibility of the testimony. The court overruled the hearsay objection and the State elicited the challenged testimony in the jury's presence. Contrary to Appellant's assertions, the trial court did not tell the State how to lay the predicate in order for a dying declaration to be admissible. As was the case with the two previous issues, the judge's comments could not have tainted the presumption of innocence or vitiated the impartiality of the jury because all of the comments occurred during bench conferences. *See Murchison*, 93 S.W.3d at 261-62 and n.4; *see also Baca*, 223 S.W.3d at 482.

*Questioning a Witness*

Finally, in the seventh instance identified by Appellant, a witness testified through an interpreter that she saw the shooter walking away from the apartments. When testifying what direction the shooter walked, the witness indicated with her left hand, and the court interrupted to ask whether the witness was facing the apartments or the street. As conceded by the State, the better practice is for trial judges to refrain from questioning witnesses, but error is not shown when the trial court questions a witness for the purpose of clarifying previous testimony. *See*

*Brewer*, 572 S.W.2d at 721 (questioning of witnesses at revocation of probation hearing by trial court, which maintained an impartial attitude throughout, for purpose of clarifying an issue before court, was permissible); *Moore*, 275 S.W.3d at 636-37 (trial court's unobjected-to questions to fingerprint expert, called during punishment phase of arson trial to show that defendant was person previously convicted of felonies alleged in indictment, were not fundamental error; questions merely clarified whether the fingerprint analysis had a potential for misidentification, and did not deprive defendant of a fair and impartial trial).  Later during the witness' testimony, the trial judge instructed the jury that they were restricted to the official interpretation of what the witness said.  The judge's instruction was a correct statement of the law and did not amount to fundamental error.

With the exception of one instance set forth above, we find that the trial court acted within its discretion during trial and the court's comments and actions did not taint the presumption of innocence or vitiate the defendant's right to an impartial jury.  Even in the instance where error occurred, it does not rise to the level of fundamental error.  Accordingly, Appellant was required to object in order to preserve error with respect to the arguments raised in this point of error.  Because he failed to preserve error, we overrule Point of Error Fourteen.

Having sustained Point of Error One, we reverse the conviction for the offense of capital murder.  We reform the judgment to reflect a conviction of the murder of West and remand the cause for a punishment hearing.  *See Roberts*, 273 S.W.3d at 332; *see also Haynes v. State*, 273 S.W.3d 183, 187 (Tex.Crim.App. 2008).

July 28, 2010

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)