Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





QUINN CRUZ, JR.,

                                    Appellant,

v.

THE STATE OF TEXAS,

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-08-00213-CR

Appeal from
205th District Court

of El Paso County, Texas

(TC # 20060D00581)



 

 

 




O P I N I O N

            Quinn Cruz, Jr. appeals his conviction of capital murder. Prior to trial, the State gave
notice that it would not seek the death penalty. A jury found Appellant guilty of capital murder
and his punishment was automatically set at life imprisonment. See Tex.Penal Code Ann. §
12.31 (Vernon Supp. 2009). We reverse and remand for a new punishment hearing. 
FACTUAL SUMMARY
            Appellant and the victim, Tonya West, moved into the Crest Apartments on October 18,
2005. Approximately one week later, West left Appellant and moved into another apartment in
the same complex. On the morning of November 18, 2005, Appellant and West had a
conversation in the parking lot about their break-up. Several residents heard a gunshot and a
woman scream and saw West attempting to get away from Appellant. The witnesses saw
Appellant following her through the parking lot while firing a weapon at her at close range. One
resident who rushed to West’s side, asked if she knew who shot her, and she replied, “Quinn Cru
--.” West died later at the hospital. 
            One witness testified that Appellant calmly walked away. Another witness, James
Thomas, encountered Appellant as he left the scene and asked him what was going on. 
Appellant replied, “You better get over there, some serious shit just went down over there.” 
Appellant then said he had to go. Later that same day, Appellant called the police and said he
had done something horrible and wanted to turn himself into the police. He told the officer that
he would go back to the scene and turn himself in. In a subsequent call to police, Appellant said
he wanted to turn himself in, but he was afraid he would be shot. After being reassured he would
not be harmed, Appellant told the detective that he was at a car wash near the apartments. 
Detectives went to the car wash and took Appellant into custody. Appellant later took the police
to the drainage pipe where he had disposed of the gun. 
            The medical examiner, Dr. Juan Contin, performed the autopsy on West. He determined
that four bullets had entered West’s body. One of the shots had been fired at close range,
approximately 12-15 inches. West died from internal bleeding caused by the multiple gunshot
wounds. Dr. Contin discovered during the autopsy that West was about two to three weeks
pregnant at the time of her death. The defense’s medical expert, Dr. Harry Wilson, agreed with
Dr. Contin’s estimation of the embryo’s stage of development as two to three weeks. According
to Dr. Wilson, there would have been no visible signs of pregnancy and no one would have been
able to tell from outward appearance that West was pregnant. It also was too early in the
pregnancy for West to have experienced morning sickness. 
            A grand jury indicted Appellant for the capital murder of West and the unborn fetus by
shooting West with a firearm. The trial court submitted to the jury the charged capital murder
offense (both West and the unborn child) and the lesser-included offense of murder (West only). 
The jury found Appellant guilty of capital murder as charged in the indictment. This appeal
follows.
LEGAL SUFFICIENCY OF THE EVIDENCE
            In Point of Error One, Appellant challenges the legal sufficiency of the evidence to prove
he had specific intent to kill the unborn child. In reviewing the legal sufficiency of evidence, we
consider all of the evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560
(1979). A person commits murder if he intentionally or knowingly causes the death of an
individual. See Tex.Penal Code Ann. § 19.02(b)(1)(Vernon 2003). A person commits capital
murder if he intentionally or knowingly causes the death of an individual and he murders more
than one person during the same criminal transaction. Tex.Penal Code Ann. § 19.02(b)(1);
Tex.Penal Code Ann. § 19.03(a)(7)(A)(Vernon Supp. 2009). The Penal Code’s definition of a
“person” includes “an individual.” Tex.Penal Code Ann. § 1.07(a)(38)(Vernon Supp. 2009). 
An “individual” is defined as “a human being who is alive, including an unborn child at every
stage of gestation from fertilization until birth.” Tex.Penal Code Ann. § 1.07(a)(26). If a
person intentionally or knowingly causes the death of a woman and her unborn child at any stage
of gestation, he commits the offense of capital murder. See Lawrence v. State, 240 S.W.3d 912,
915 (Tex.Crim.App. 2007), cert. denied, 553 U.S. 1007, 128 S.Ct. 2056, 170 L.Ed.2d 798
(2008).
            At the time this case was tried, the concept of transferred intent applied to capital murder. 
Norris v. State, 902 S.W.2d 428, 437-38 (Tex.Crim.App. 1995), overruled by Roberts v. State,
273 S.W.3d 322 (Tex.Crim.App. 2008). Under this rule, if an accused killed his intended victim,
and also killed an unintended victim, he was criminally responsible for both murders. Norris,
902 S.W.2d at 437-38. But more recently, the Court of Criminal Appeals overruled Norris in
Roberts v. State, 273 S.W.3d 322 (Tex.Crim.App. 2008). There, the defendant murdered a
woman and her unborn child. The woman was eight to nine weeks pregnant, and as in the
present case, there was no evidence that the defendant was aware the woman was pregnant. See
id. at 327. In the context of a multiple-murder-capital-murder statute which requires that each
death be intentional or knowing, the court held that when an accused only intends to kill one
individual and actually kills that person, the intent manifested in that killing cannot also then
transfer to another, unintended victim. Id. at 331.
            The Court of Criminal Appeals reasoned that the concept of transferred intent cannot be
used to charge capital murder based on the death of an unintended victim. Transferred intent
may be used in regard to a second death only if there is proof of the intent to kill ths same
number of persons who actually died; that is, with intent to kill two people and two other people
are killed. Id. at 330-31. The court further held that in order to charge a person with
intentionally killing the second person, an embryo in the Roberts case, there must be the specific
intent to do so. Id. at 331. It then concluded that since Roberts did not know that the intended
victim was pregnant, he could not form the specific intent to kill the embryo. Id. The court
reformed the judgment to reflect a conviction for murder of the mother, and the case was
remanded to the trial court for a new punishment hearing for a single murder conviction. See id.
at 332.
            The State concedes that the evidence is legally insufficient to prove that Appellant
intended to kill the unborn child as there is no evidence he knew West was pregnant, but it
argues that the judgment should be reformed to reflect a conviction for the murder of West and
the cause should be remanded for a new punishment hearing. We agree. The trial court
submitted the lesser-included offense of murder to the jury. Further, Appellant has not
challenged the sufficiency of the evidence proving he intentionally and knowingly caused the
death of West by shooting her with a firearm. We therefore sustain Point of Error One. Unless
we find reversible error in the remaining issues presented on appeal which would result in the
granting of a new trial for purposes of guilt/innocence, the proper resolution will be to reform the
judgment to reflect a conviction for the murder of West and remand the cause for a punishment
hearing. See Roberts, 273 S.W.3d at 332; see also Haynes v. State, 273 S.W.3d 183, 187
(Tex.Crim.App. 2008). Having sustained Point of Error One, it is unnecessary to address Point
of Error Two in which Appellant challenges the factual sufficiency of the evidence supporting
the capital murder conviction. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). 
CONSTITUTIONALITY OF CAPITAL MURDER STATUTE
            In Points of Error Three through Eight, Appellant contends that the statutory scheme
permitting a capital murder prosecution and conviction for the murder of a pregnant woman and
her unborn child is unconstitutional as applied to him in this case. The constitutionality of a
statute should not be determined in any case unless such a determination is absolutely necessary
to decide the case in which the issue is raised. Turner v. State, 754 S.W.2d 668, 675
(Tex.Crim.App. 1988). This court has held that if an appellant raises multiple issues on appeal,
some of which challenge the constitutionality of a statute, the reviewing court should first resolve
the non-constitutional issues and if a reversal is required, the issues regarding the statute’s
constitutionality should not be addressed. Collins v. State, 890 S.W.2d 893, 896 (Tex.App.--El
Paso 1994, no pet.). Because we have found the evidence legally insufficient to support
Appellant’s capital murder conviction, we decline to address Appellant’s challenges to the
constitutionality of the capital murder statutes. 
WRITTEN QUESTIONNAIRES
            In Point of Error Nine, Appellant complins that the trial court erred by failing to submit
written questionnaires to the prospective jurors. He argues that the trial court’s ruling deprived
him of the effective assistance of counsel because it prevented counsel from being able to
effectively question the jurors about various subjects, including the jurors’ beliefs and attitudes
towards the death penalty. 
            During a pretrial conference, defense counsel asked if a written questionnaire could be
submitted to the jury panel. The trial court ruled that only the standard juror-information
questionnaires would be used. Appellant subsequently filed a written request to submit
additional questionnaires to the prospective jurors. Immediately prior to the beginning of voir
dire, defense counsel again raised the written questionnaire issue but the trial court denied the
request. That same day, Appellant filed a proposed written questionnaire which included a
section addressing the potential jurors’ beliefs regarding the death penalty. 
            The conduct of voir dire rests within the sound discretion of the trial court. Woods v.
State, 152 S.W.3d 105, 108 (Tex.Crim.App. 2004); Mata v. State, 867 S.W.2d 798, 803
(Tex.App.--El Paso 1993, no pet.). Consequently, we review the trial court’s decisions
regarding the manner in which voir dire is conducted for an abuse of discretion. Curry v. State,
910 S.W.2d 490, 492 (Tex.Crim.App. 1995); Mata, 867 S.W.2d at 803. Generally, a trial court
abuses its discretion when it acts without reference to any guiding rules or principles. 
Montgomery v. State, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990). Stated differently, a trial
court abuses its discretion when it acts arbitrarily or unreasonably. Id.
            Under Section 62.0132 of the Government Code, the Office of Court Administration is
given the task of developing and maintaining a questionnaire to accompany a written jury
summons. Tex.Gov’t Code Ann. § 62.0132(a)(Vernon 2005). The statute mandates that the
questionnaire require a person to provide certain biographical and demographic information
relevant to service as a jury member. Tex.Gov’t Code Ann. § 62.0132(c). A person who has
received a written jury summons and the questionnaire is required to complete and submit the
questionnaire when the person reports for jury duty. Tex.Gov’t Code Ann. § 62.0132(c), (d). 
Appellant has not cited any rule, statute, or any other authority requiring the trial court to submit
additional questionnaires requested by either the State or the defense. It therefore cannot be said
that the trial court acted without reference to any guiding rules or principles. Appellant has not
shown that the trial court’s refusal to submit the questionnaire constituted an arbitrary or
unreasonable act given that defense counsel had the opportunity to examine the venire and ask
questions about numerous topics including those addressed in the questionnaire. Appellant
nevertheless argues, citing sociological studies and law review articles, that written
questionnaires are a superior method of obtaining truthful information from potential jurors. 
While that may well be true, Appellant failed to present any of this information to the trial court. 
Additionally, the Court of Criminal Appeals has cautioned against reliance on written
questionnaires to supply any information that counsel deems material due to the possibility of
misinterpretation of questions. See Gonzales v. State, 3 S.W.3d 915, 917 (Tex.Crim.App. 1999). 
Because the record before us does not demonstrate an abuse of discretion, we overrule Point of
Error Nine.
RESTRICTION OF VOIR DIRE
            In Points of Error Ten and Eleven, Appellant alleges that the trial court improperly
restricted voir dire by not permitting him to ask a hypothetical question addressing the
prospective jurors’ ability to consider the minimum punishment if they found him guilty of the
lesser-included offense of murder. 
            The right to counsel guaranteed by Article I, Section 10 of the Texas Constitution
includes the right of counsel to question the venire in order to intelligently exercise peremptory
challenges. Ex parte McKay, 819 S.W.2d 478, 482 (Tex.Crim.App. 1990); Mata v. State, 867
S.W.2d 798, 803 (Tex.App.--El Paso 1993, no pet.). When an appellant challenges a trial
judge’s limitation on the voir dire process, the reviewing court must analyze the claim under an
abuse of discretion standard, the focus of which is whether the appellant proffered a proper
question concerning a proper area of inquiry. Jones v. State, 223 S.W.3d 379, 381
(Tex.Crim.App. 2007); Howard v. State, 941 S.W.2d 102, 108 (Tex.Crim.App. 1996). A proper
question is one which seeks to discover a veniremember’s views on an issue applicable to the
case. Howard, 941 S.W.2d at 108. If a proper question is disallowed, harm to the appellant is
presumed because he has been denied the ability to intelligently exercise his peremptory strikes. 
Id. However, a trial court is given broad discretionary authority to impose reasonable restrictions
on the voir dire process. Id. The trial court is permitted to control the scope of voir dire by
limiting improper questioning. Smith v. State, 703 S.W.2d 641, 643 (Tex.Crim.App. 1985).
            During voir dire, defense counsel addressed the issue of the potential jurors’ ability to
consider probation for the lesser-included offense of murder:
Now, assume with me that you are on -- wait a minute -- one more little point. 
We are talking about the definitions of unborn child and there is some suggestion
that the fetus, an unborn child, is also another stage of gestation called embryo.
 
And apparently under the definitions of the law an unborn child which can be
murder; an embryo.
 
Now, I want you assume with me that you are on the jury. Now in a hypothetical
case in which the accused was charged with capital murder; this is, the indicted
charges were the accused intentionally and knowingly caused the death of a
certain individual by shooting that individual with a firearm and the accused
intentionally and knowingly caused the death of another individual; namely, the
unborn child of the first victim with a firearm and both murders were committed
during the same criminal transaction.
 
It is your opinion in a hypothetical case where that was the original accusation. 
Assume further that you and your fellow jurors considered the case. You hear all
the evidence, you went back in the juryroom. You have deliberated and you-all
came to the conclusion and the verdict that the accused was not guilty of the
capital murder for which he was indicted.
 
Okay. Assume with me further that after you and your fellow jurors found the
accused not guilty of the capital murder, you considered all the evidence in the
case and convicted the accused of the lesser included offense of murder. 
 
And in order to do that, you would have had to determine that the accused
committed intentionally, that he did it because he wanted to do it, that the accused
was not forced to commit it, that the killing was not done in self defense, that it is
not done in defense of a third party, that it was not an accident. 
 
Not a mistake. That the accused was not insane, that the victim was totally
innocent and that the victim did not provoke the murder or deserve to die.
 
After coming to these conclusions and arriving at a verdict of guilty of murder,
your next job would be to determine the punishment in that case. 

The prosecutor objected that the hypothetical was an improper attempt to have the jurors commit
to a particular result under a particular set of facts. Appellant’s attorney responded that he could
include the elements of the indictment in the hypothetical. The trial court asked defense counsel
to restate his hypothetical without getting into the facts of the case. 
            Defense counsel restated the hypothetical but again included the facts by asking the
potential jurors whether they could consider five years probation in a case where the person was
charged with intentionally and knowing shooting and killing the victim and her unborn child and
the jury found the defendant guilty of murder. The State objected to the hypothetical on the
ground of improper contracting and stated that the prospective jurors only had to be able to
consider the full range of punishment in any given case, not the specifics of the case on trial. The
court instructed defense counsel to ask whether the jurors could consider probation in an
appropriate case. Defense counsel insisted that he wanted to ask the question as stated and
tendered the question in writing to the court. Ultimately, defense counsel was permitted to ask
each prospective juror whether he or she could consider the minimum punishment where the
defendant is found guilty of the lesser-included offense of murder. 
            During voir dire, an attorney cannot attempt to bind or commit a prospective juror to a
verdict based on a hypothetical set of facts. Standefer v. State, 59 S.W.3d 177, 179-80
(Tex.Crim.App. 2001). A question is a commitment question if one or more of the possible
answers is that the prospective juror would resolve or refrain from resolving an issue in the case
on the basis of one or more facts contained in the question. Id. at 179-80. Not all commitment
questions are improper. Id. at 181. The law requires jurors to make certain types of
commitments. Id. Consequently, the attorneys may ask the prospective jurors whether they can
follow the law in that regard. Id. For example, a prospective juror is challengeable for cause if
he or she is unable to consider the full range of punishment provided for an offense. Id. Thus,
the question, “Can you consider probation in a murder case?” is a proper question even though it
commits a prospective juror to keeping the punishment options open (i.e., to refraining from
resolving the punishment issues in a certain way) in a murder case. Id. But the question
becomes improper when it adds facts beyond what is necessary to determine whether the
prospective juror is challengeable for cause. Id. at 182. The inquiry for improper commitment
questions has two steps: (1) is the question a commitment question, and (2) does the question
include facts--and only those facts--that lead to a valid challenge for cause? If the answer to (1)
is “yes” and the answer to (2) is “no,” then the question is an improper commitment question,
and the trial court should not allow the question. Id. at 182-83.
            Here, the answer to the first question is “yes” because Appellant concedes, and we agree,
that the question he sought to ask is a commitment question. We further find that the answer to
the second question is “no” because the hypothetical question utilized by defense counsel--stating
that the defendant was accused of intentionally and knowingly killing a woman and her unborn
child and the woman by shooting the woman, the woman was totally innocent, and the defendant
did it because he wanted to do it--included facts beyond what was necessary to establish that a
prospective juror was unable to consider the minimum punishment in a murder case. See
Standefer, 59 S.W.3d at 181-82 (overruling Maddux v. State, 862 S.W.2d 590, 591-92
(Tex.Crim.App. 1993) which held that defendant in a murder case involving a child could inquire
whether the prospective jurors could consider probation if the murder victim was a child). Thus,
the hypothetical question Appellant sought to ask was an improper commitment question and the
trial court properly disallowed it. Points of Error Ten and Eleven are overruled.
CHALLENGES FOR CAUSES
            In Point of Error Twelve, Appellant maintains that the trial court erred by denying his
challenges for cause to prospective juror number four and sixty-seven other prospective jurors
who could not consider probation for the lesser-included offense of murder. Because Appellant
was convicted of capital murder, the jury did not determine punishment. Consequently, any error
relating to the punishment range of the lesser-included offense of murder is harmless because it
made no contribution to Appellant’s conviction or punishment. See King v. State, 953 S.W.2d
266, 268 (Tex.Crim.App. 1997)(where defendant was convicted of capital murder, Court of
Criminal Appeals found harmless the alleged error in the denial of the defendant’s challenges for
cause related to two potential jurors’ inability to consider probation for the lesser-included
offense of murder because it made no contribution to the defendant’s conviction or punishment). 
Point of Error Twelve is overruled. 
CUMULATIVE ERROR
            In Point of Error Thirteen, Appellant contends that cumulative error during jury selection
prevented defense counsel from providing the effective assistance of counsel guaranteed by the
state and federal constitutions. There is some authority that a number of errors may be found
harmful in their cumulative effect, but there is no authority holding that non-errors may in their
cumulative effect cause error. See Chamberlain v. State, 998 S.W.2d 230, 238 (Tex.Crim.App.
1999). We have found no error occurred in connection with Points of Error Nine, Ten, and
Eleven. In Point of Error Twelve, we did not address the merits of the complaint but found that
even if error occurred it was harmless. Because there is no basis for finding cumulative error, we
overrule Point of Error Thirteen.
TRIAL COURT’S CONDUCT
            In his final point of error, Appellant argues that the trial court violated his right to a fair
trial by interrupting defense counsel during voir dire, making improper comments to the jury
panel, assisting the prosecutor, and by questioning a witness. Appellant admits that he did not
object to any of the instances of alleged improper conduct by the trial judge, but he contends that
the judge’s behavior amounts to fundamental error, and therefore, he was not required to object. 
In support of his fundamental error argument, Appellant cites the Court of Criminal Appeals’
plurality opinion in Blue v. State, 41 S.W.3d 129, 131 (Tex.Crim.App. 2000)(plurality op.). 
            Due process requires a neutral and detached judge. Brumit v. State, 206 S.W.3d 639, 645
(Tex.Crim.App. 2006), citing Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d
656 (1973). Failure to raise a contemporaneous objection generally results in failure to preserve
error for appellate review. See Tex.R.App. P. 33.1(a); see also Brewer v. State, 572 S.W.2d 719,
721 (Tex.Crim.App. 1978)(where no objection is made, remarks and conduct of the court may
not be subsequently challenged unless they are fundamentally erroneous). But Rule 103(d) of the
Texas Rules of Evidence authorizes appellate courts to take notice of fundamental errors
affecting substantial rights even though they were not brought to the attention of the trial court. 
Tex.R.Evid. 103(d). In Blue, the trial judge apologized to the venire for its long wait, stated the
delay was because the defendant was indecisive on whether to accept a plea bargain, and
expressed his preference that the defendant plead guilty. Id. at 130. A plurality of the Court of
Criminal Appeals held that the trial judge’s comments tainted the defendant’s presumption of
innocence in front of the venire and amounted to fundamental error of constitutional dimension
which required no objection. Blue, 41 S.W.3d at 132. Thus, the defendant’s failure to object did
not constitute waiver. Id. at 132.
            Blue is not binding precedent because it is a plurality opinion. See Jasper v. State, 61
S.W.3d 413, 421 (Tex.Crim.App. 2001)(acknowledging Blue as a plurality opinion that the court
was not bound to follow). In Brumit v. State, the defendant relied on Blue, but the Court of
Criminal Appeals held that we must look to the test set forth in Marin v. State, 851 S.W.2d 275
(Tex.Crim.App. 1993) when determining whether comments by the trial judge can be raised on
appeal absent an objection. Brumit v. State, 206 S.W.3d 639, 644 (Tex.Crim.App. 2006). 
Under Marin, it must be determined whether the alleged error violated (1) an absolute
requirement or prohibition; (2) a right of the defendant that must be implemented by the system
unless expressly waived; or (3) a right that is to be implemented upon request of the defendant. 
See Brumit, 206 S.W.3d at 644. Despite these comments, the court chose not to reach the
preservation issue because it found that the judge’s comments did not show partiality on the part
of the judge. Id. at 644-45. In other words, the court did not reach the preservation issue because
it addressed the merits and found no error. Because the Court of Criminal Appeals has not
spoken definitively on the preservation issue, we will follow Brumit’s approach and determine
whether the trial judge’s comments were erroneous.
            A trial judge has discretion in maintaining control and expediting trial. Jasper v. State,
61 S.W.3d 413, 421 (Tex.Crim.App. 2001). It is not improper for a trial judge to interject to
correct a misstatement or misrepresentation of previously admitted testimony. Id. Likewise, a
trial judge is permitted to correct a misstatement of the law, explain a point of law or clear up
confusion, or to expedite the proceedings. See Jasper, 61 S.W.3d at 421; Moore v. State, 275
S.W.3d 633, 636 (Tex.App.--Beaumont 2009, no pet.); Murchison v. State, 93 S.W.3d 239, 262
(Tex.App.--Houston [14th Dist.] 2002, pet. ref’d). Further, a trial judge is permitted to question
a witness for the purpose of clarifying an issue or assisting the court in ruling on an objection. 
Brewer v. State, 572 S.W.2d 719, 721 (Tex.Crim.App. 1978); Moore, 275 S.W.3d at 636-37. 
Comments During Voir Dire
            Appellant first complains of five instances during voir dire when the trial court
interrupted defense counsel to make comments. The first instance occurred while defense
counsel was addressing pretrial publicity and possible bias. The court interrupted to comment on
the value of the jury system and the failure of the media to be 100 percent accurate. The court
also clarified that the bias counsel was discussing existed prior to the jury hearing any evidence. 
The court’s comments were a permissible exercise of the court’s discretion to explain and clarify
a point of law or clear up confusion. See Jasper, 61 S.W.3d at 421; Moore, 275 S.W.3d at 636;
Murchison, 93 S.W.3d at 262.          The court also commented while defense counsel was
addressing the defendant’s right to remain silent. The court clarified the right to remain silent
and emphasized that the State had the burden of proof. These comments were not improper
because the court was clarifying the law. See Jasper, 61 S.W.3d at 421; Moore, 275 S.W.3d at
636; Murchison, 93 S.W.3d at 262.
            Defense counsel then addressed what he referred to as gender bias on the part of the
prospective jurors and he attempted to ascertain whether any of them felt it was easier to believe
that a male defendant was the aggressor where the victim was female. The trial judge clarified
the meaning of the term bias and asked questions to clarify a prospective juror’s views. The trial
judge acted properly by clarifying the meaning of the term bias. Further, given that the judge
might be called upon to rule on a challenge for cause, the judge did not act improperly by
clarifying the prospective juror’s views on this subject.
            The court also interrupted defense counsel when counsel was addressing whether the
venire could consider the minimum range of punishment in a case where the defendant was
found guilty of the lesser included offense of murder. As pointed out by the State, the judge
made an initial comment clarifying the law, but the majority of the judge’s comments were made
at the bench outside the hearing of the jury. The court’s comment made to the venire was
directed at clarifying the legal issue and were made necessary because defense counsel was
attempting to ask improper commitment questions. As such, it was a proper comment. Further,
the comments made at the bench could not have tainted the presumption of innocence nor could
they have vitiated the defendant’s right to an impartial jury trial. See Murchison, 93 S.W.3d at
261-62 and n.4 (judge’s comments made outside of jury’s presence could not have affected
defendant’s right to an impartial jury trial); see also Baca v. State, 223 S.W.3d 478, 482
(Tex.App.--Amarillo 2006, no pet.)(judge’s comment made outside of jury’s presence could not
constitute comment on the weight of the evidence and did not amount to fundamental error).
Assisting the Prosecutor
            In instances 6, 8, 9, and 10, Appellant asserts that the trial judge improperly assisted the
prosecutors by instructing them to ask a witness certain questions and by telling the prosecutor
how to lay a predicate. In the sixth instance set forth in Appellant’s brief, a witness testified he
saw a man shooting a gun and then leaving the scene. As the witness was about to be excused,
the judge informed the parties at the bench that the prosecutor had not asked the witness to
identify the shooter. In the jury’s presence, the prosecutor asked a few additional questions and
asked the witness if he could identify the shooter. The witness positively identified Appellant as
the shooter. We agree that it was improper for the trial judge to remind the prosecutor, even
outside of the jury’s hearing, that she had not asked a witness to identify the defendant but the
error does not demonstrate judicial bias nor does it rise to the level of fundamental error. See
Houston v. State, No. 03-05-00188-CR, 2006 WL 431188 (Tex.App.--Austin February 24, 2006,
pet. ref’d)(after defendant objected that State had failed to prove the prior DWI convictions in a
felony DWI case, the trial judge stated that prosecutor could re-open the evidence and put on
evidence of the prior convictions; court of appeals held that judge’s suggestion was improper but
it did not demonstrate judicial bias or amount to fundamental error). Appellant failed to preserve
error because he did not object.
            In the eighth and ninth instances, the State attempted to elicit testimony from two
witnesses, James Thomas and Carlos Carrillo, regarding their observations of the victim at the
scene. During Thomas’ testimony, the State asked whether the victim made any statements but
asked Thomas not to relate the statements. The defense raised a hearsay objection and the parties
engaged in a discussion at the bench about the admissibility of the testimony. The judge told the
prosecutor at the bench what part of the predicate the court believed had not been established. 
The trial court erroneously believed that under the dying declaration exception, the proponent of
the evidence was required to prove that the witness believed that the declarant’s death was
imminent. Thomas testified in the jury’s presence he believed West was dying but he never
informed the jury of the substance of his conversation with her. Carrillo testified he asked the
victim who had done this to her, but the defense raised two objections, hearsay and failure to lay
the proper predicate, before the witness could answer.


 During a bench conference, defense
counsel stated the court had previously misstated the admissibility requirements of Rule
804(b)(2), and she argued that the State was required to prove that the declarant believed her
death was imminent. The court sustained the objection after discussing the admissibility
requirements with the attorneys at the bench. The trial court took the matter under advisement
and asked the parties to provide authority. 
            We agree with the State that the trial judge was not “coaching” the State in either instance
as alleged by Appellant but rather was engaging in a discussion about the admissibility of the
testimony. Appellant provides no authority for the proposition that it is improper for a judge to
explain to the parties, outside of the jury’s presence, the basis for the court’s ruling that evidence
is or is not admissible. The State correctly observes that these types of discussions occur in
virtually every trial. It should also be noted that the erroneous requirement that the trial judge
placed on the State to prove that witness Thomas knew that the victim was dying could have
proven extremely difficult for the State to establish had Thomas not been a Vietnam veteran who
had seen numerous people die of gunshot sounds. The court’s erroneous ruling was not helpful
to the State. Finally, none of the judge’s comments could have tainted the presumption of
innocence or vitiated the impartiality of the jury because all of the comments occurred during
bench conferences. See Murchison, 93 S.W.3d at 261-62 and n.4 (judge’s comments made
outside of jury’s presence could not have affected defendant’s right to an impartial jury trial); see
also Baca v. State, 223 S.W.3d 478, 482 (Tex.App.--Amarillo 2006, no pet.)(judge’s comment
made outside of jury’s presence could not constitute comment on the weight of the evidence and
did not amount to fundamental error).
            In the tenth instance, the State was eliciting testimony from Michael Jordan, Sr., a
lieutenant with the El Paso Fire Department about his observations and emergency medical
treatment of the victim at the scene. When the State attempted to ask Jordan whether the victim
had made any statements about her condition, the defense raised a hearsay objection and the trial
court conducted a hearing outside of the jury’s presence. During this hearing, the parties and the
court engaged in a discussion about the admissibility of the testimony. The court overruled the
hearsay objection and the State elicited the challenged testimony in the jury’s presence. Contrary
to Appellant’s assertions, the trial court did not tell the State how to lay the predicate in order for
a dying declaration to be admissible. As was the case with the two previous issues, the judge’s
comments could not have tainted the presumption of innocence or vitiated the impartiality of the
jury because all of the comments occurred during bench conferences. See Murchison, 93 S.W.3d
at 261-62 and n.4; see also Baca, 223 S.W.3d at 482.
Questioning a Witness
            Finally, in the seventh instance identified by Appellant, a witness testified through an
interpreter that she saw the shooter walking away from the apartments. When testifying what
direction the shooter walked, the witness indicated with her left hand, and the court interrupted to
ask whether the witness was facing the apartments or the street. As conceded by the State, the
better practice is for trial judges to refrain from questioning witnesses, but error is not shown
when the trial court questions a witness for the purpose of clarifying previous testimony. See
Brewer, 572 S.W.2d at 721 (questioning of witnesses at revocation of probation hearing by trial
court, which maintained an impartial attitude throughout, for purpose of clarifying an issue
before court, was permissible); Moore, 275 S.W.3d at 636-37 (trial court’s unobjected-to
questions to fingerprint expert, called during punishment phase of arson trial to show that
defendant was person previously convicted of felonies alleged in indictment, were not
fundamental error; questions merely clarified whether the fingerprint analysis had a potential for
misidentification, and did not deprive defendant of a fair and impartial trial). Later during the
witness’ testimony, the trial judge instructed the jury that they were restricted to the official
interpretation of what the witness said. The judge’s instruction was a correct statement of the
law and did not amount to fundamental error. 
            With the exception of one instance set forth above, we find that the trial court acted
within its discretion during trial and the court’s comments and actions did not taint the
presumption of innocence or vitiate the defendant’s right to an impartial jury. Even in the
instance where error occurred, it does not rise to the level of fundamental error. Accordingly,
Appellant was required to object in order to preserve error with respect to the arguments raised in
this point of error. Because he failed to preserve error, we overrule Point of Error Fourteen.
            Having sustained Point of Error One, we reverse the conviction for the offense of capital
murder. We reform the judgment to reflect a conviction of the murder of West and remand the
cause for a punishment hearing. See Roberts, 273 S.W.3d at 332; see also Haynes v. State, 273
S.W.3d 183, 187 (Tex.Crim.App. 2008).

July 28, 2010                                                               
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)